UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

GINA AMOROSANO-LEPORE,                    :

                 Plaintiff,     :

      - against -                       :

JAMES GENEROSO, individually, VICTORIA :
L. KANE, individually, BARBARA COLEMAN,
individually, MATTHEW IAROCCI,            :
individually, and the CITY OF NEW
ROCHELLE, New York,                       :

               Defendants.    :

- - - - - - - - - - - - - - - - - - - X

06 Civ. 1223 (WCC)

**ECF CASE**

**OPINION**
**AND ORDER**

**A P P E A R A N C E S :**

                           LOVETT & GOULD, LLP
                           **Attorneys for Plaintiff**
                           222 Bloomingdale Road - Suite 305
                           White Plains, New York 10605

DRITA NICAJ, ESQ.

        Of Counsel

                           WILSON, ELSER, MOSKOWITZ, EDELMAN
                           & DICKER LLP
                           **Attorneys for Defendants**
                           **Matthew Iarocci and City of New**
                           **Rochelle**
                           3 Gannett Drive
                           White Plains, New York 10604

PETER A. MEISELS, ESQ.
LALIT K. LOOMBA, ESQ.

        Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiff, Gina Amorosano-Lepore brings this action against defendants James Generoso ("Generoso"), Victoria L. Kane ("Kane"), Barbara Coleman ("Coleman") (collectively "State defendants"), Matthew Iarocci ("Iarocci") and the City of New Rochelle (the "City") (collectively "City defendants") pursuant to 42 U.S.C. § 1983. She alleges that defendants violated her First and Fourteenth Amendment rights when they preferred disciplinary charges against her resulting in her termination as employee of the New Rochelle City Court (the "City court"). All defendants moved for summary judgment on various grounds and in an Opinion and Order (the "Opinion") dated July 18, 2008 we granted the motions in part and denied them in part. The City defendants now move for reconsideration of that Opinion in so far as it partially denied summary judgment to Iarocci and the City. For the following reasons, defendants' motion is denied.

**BACKGROUND**

The facts of this case are laid out at length in our Opinion, familiarity with which is presumed. We briefly summarize the facts relevant to this motion.

Plaintiff was employed as a clerk of the City court from February 5, 1996 to August 4, 2006. (7/18/08 Op. at 1.) Defendant Generoso was employed as Chief Clerk of the City court and defendant Iarocci was employed as Personnel Director for the City. (*Id*.) Sometime during the week of March 29, 2004, Generoso and Judge Preston Scher interviewed plaintiff for a potential promotion, which she did not receive. (*Id*. at 2.) In April 2004, at plaintiff's request, plaintiff and her husband met with Iarocci. (*Id*.) During that meeting, plaintiff told Iarocci that she was unhappy that she did not receive the promotion, and believed she was treated unfairly during her interview

with Generoso and Judge Scher. (*Id*. at 3.) According to plaintiff and her husband, at this meeting plaintiff also expressed concerns that employees at the court falsified documents and padded tickets, that Generoso received gifts for dismissing or reducing tickets and violations, that Coleman stole approximately $3,500, that Generoso's aunt, who was also a court employee, repeatedly cursed and referred to people as "niggers" and that the City Marshal ran a private law office on City time. (*Id*.)

On July 9, 2004, a meeting was held among plaintiff, Iarocci, Generoso, Kane and plaintiff's union representative, Carl Hochberger ("Hochberger"), to discuss plaintiff's concerns over the decision not to promote her. (*Id*.) According to plaintiff, Iarocci stated that she should make a "fresh start" and mentioned resignation. (*Id*. at 4.) According to Iarocci, he told plaintiff that resignation was one possibility, but that another possibility was to do a good job and pursue opportunities for promotion. (*Id*.) Plaintiff also states that at this meeting she again expressed her concern that employees were padding tickets and requested that Iarocci transfer her to a different department. (*Id*.) Iarocci told her they would not transfer an employee who is having problems in one department to another department. (*Id*.)

On March 3, 2005 plaintiff sent a letter to Judge Nicolai, Administrative Judge for the Ninth Judicial District, requesting a meeting to discuss the difficulties she was having working for Generoso. (*Id*.) In March 2005 plaintiff and her husband met with Tomme Berg ("Berg"), the district executive for the Ninth Judicial District, and they state that plaintiff communicated to Berg her concerns that Generoso accepted gifts in exchange for fixing tickets and appointed individuals who failed civil service tests, that City employees were assigned State functions and State employees City functions, that Generoso and Kane were repeatedly tardy, creating problems in the workplace, that employees were required to pay for shortages in their registers from their own funds, that the

2

City Marshal was running a private law practice and that parking tickets were improperly dismissed and/or reduced. (*Id*. at 4-5.) Berg states that plaintiff conveyed her unhappiness with her job, her feeling that she was not being treated well, a specific issue about cash shortages and some "vague and undetailed allegations about how the court was being run." (*Id*. at 5.) Following this meeting, Berg contacted Generoso to meet with him to discuss the procedures on shortages and overages in the registers. (*Id*.)

There was a meeting on March 16, 2005 with Generoso, Kane, Berg, Rita Leone ("Leone") from Berg's office, Judge Scher and Iarocci. (*Id*.) Plaintiff states that she was directed to join the meeting just before it ended and that Generoso and Iarocci pressured her to resign. (*Id*.) She also states that she expressed concern at the meeting that defendants were lying about her. (*Id*.) Generoso states that the purpose of the meeting with Kane, Berg, Leone, Iarocci and Judge Scher was for Berg and Leone to instruct the City court on procedures for handling register shortages. (*Id*.)

Sometime prior to April 26, 2005, Coleman, Kane and other staff members witnessed an argument between plaintiff and another employee. (*Id*. at 6.) Plaintiff told this employee: "No wonder your husband punched your eye out. You deserve it. I'm going to remind you that every day so you have nightmares." (*Id*.) Apparently, this employee is in fact a victim of domestic abuse. (*Id*.)

Upon learning of the event, Generoso requested that the witnesses write their recollections, and upon receiving them he drafted a report of the incident and gave it to Iarocci. (*Id*.) Iarocci and Vincent Toomey ("Toomey"), labor counsel for the City, recommended to Generoso that disciplinary charges be brought against plaintiff. (*Id*.) Generoso agreed and signed the charges prepared by Toomey on April 29, 2005 and executed a Personnel Action Form approving plaintiff's suspension from her duties on May 6, 2005. (*Id*. at 6-7.) Iarocci reviewed these charges only after they were

3

signed by Generoso. (*Id*. at 7.) According to plaintiff, on April 29 Iarocci and Generoso asked her to resign and stated that if she did not she would be permanently suspended. (*Id*.) Plaintiff was presented with the charges and suspended without pay on May 6, 2005. (*Id*.)

In our Opinion we concluded that plaintiff's First Amendment claim survived summary judgment, but that her Equal Protection claim did not. As to the First Amendment claim, we found that plaintiff spoke on matters of public concern when she discussed court corruption with defendants. We also held that there was a genuine issue of fact as to whether there was a causal link between her protected speech and the preferment of disciplinary charges against her. We concluded that plaintiff offered sufficient evidence of Iarocci and Generoso's involvement in the disciplinary charges against her to sustain a § 1983 claim. We determined that Iarocci was not entitled to absolute immunity and that qualified immunity was available to neither Iarocci nor Generoso. City defendants move for reconsideration of our Opinion on the ground that the Court overlooked evidence that the meeting on March 16, 2005 did not address plaintiff's protected speech and on the ground that the Court overlooked facts and legal authority that Iarocci's decision to initiate a disciplinary hearing against plaintiff entitled him to absolute immunity. (City Defs. Mem. Supp. Mot. Recons. at 2-3.)

## DISCUSSION

### I. <u>Standard of Review</u>

A motion for reconsideration or re-argument may be granted only if the court has overlooked "'controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court.'"

*Greenwald v. Orb Commc'ns & Mktg., Inc.*, 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003) (quoting *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000)); *see also* S.D.N.Y. LOCAL CIV. R. 6.3. Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York. *See Ades v. Deloitte & Touche*, 843 F. Supp. 888, 892 (S.D.N.Y. 1994). Local Rule 6.3 should "be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dellefave v. Access Temporaries, Inc.*, 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001). Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Brown v. Barnhart*, 2005 WL 1423241, at *1 (S.D.N.Y. June 16, 2005) ("Accordingly, the moving party may not advance new facts, issues or arguments not previously presented to the Court.") (internal quotation marks and citation omitted). "Whether to grant or deny a motion for reconsideration or reargument is in the sound discretion of a district court judge." *Greenwald*, 2003 WL 660844, at *1 (internal quotation marks and citation omitted).

## II.    Defendants' Arguments for Reconsideration

### A.    Evidence of the Causal Link Between Plaintiff's Protected Speech and the Disciplinary Charges

City defendants argue that there is no evidence that Berg relayed plaintiff's protected speech regarding court corruption to Iarocci when she met with him and others on March 16, 2005, and that

therefore there was no basis for the Court to conclude that Iarocci retaliated against plaintiff for any protected speech. (City Defs. Mem. Supp. Mot. Recons. at 4.) City defendants submit that the Court overlooked Berg's and Generoso's testimony regarding the March 16 meeting. They state that Berg testified that she discussed cash drawer shortages at this meeting but did not testify that she discussed allegations of court corruption. (*Id*. at 5-7.) Therefore, they argue, plaintiff offered no evidence that Iarocci was aware of her protected speech and the causation element of her First Amendment claim has not been sustained. (*Id*. at 8-9; City Defs. Reply Mem. Supp. Mot. Recons. at 2-3.) However, City defendants' argument is not supported by the evidence they cite. Berg and Generoso testified that they discussed cash drawer shortages at the March 16 meeting, but they did not testify that they did not discuss plaintiff's allegations.

This Court did not overlook Berg's testimony about the March 16 meeting. In our Opinion we noted that defendants stated that the meeting was held to discuss the procedures for handling court register shortages and that plaintiff did not allege that she spoke about corruption or theft at the meeting. (7/18/08 Op. at 5, 15.) However, we concluded that "it strains credulity to think that mere days after plaintiff went outside of the City court and complained to Berg about court corruption,[1] Berg held a meeting with defendants without mentioning any of those complaints. . . . It is inconceivable that Berg would not even mention these charges to defendants during the March 16 meeting." (*Id*. at 15.) Therefore, we did not "overlook" any testimony about the March 16 meeting. City defendants disagree with our conclusion that plaintiff sustained her burden on the element of causation, however, this is not a proper basis for reconsideration.

---

[1] As district executive for the Ninth Judicial District, Berg oversees the administration of all courts within the District, including the New Rochelle City Court. This was the first time that plaintiff had taken her complaints and concerns outside the confines of the City court.

## B.    Facts and Legal Authority Regarding Iarocci's Liability

City defendants argue that absolute immunity applies to officials who participate in the decision to initiate charges, not merely those who sign the disciplinary charges, citing *Verbeek v. Teller*, 158 F. Supp. 2d 267, 281 (E.D.N.Y. 2001).  (City Defs. Mem. Supp. Mot. Recons. at 3.)  However, City defendants point to no controlling case law that this Court overlooked in concluding that Iarocci was not entitled to absolute immunity.[2]  Even considering *Verbeek*, we would draw the same conclusion now that we did in our Opinion.

In *Verbeek*, the court held that prosecutorial immunity extended to executive officials who performed functions analogous to those of a prosecutor, and therefore applied absolute immunity to those officials who approved the prosecution of charges.  *Id*. at 281-82.  However, the court also held that absolute immunity did not extend to the chief of police because he did not have authority under Civil Service Law § 75 to adjudicate disciplinary proceedings, and therefore he did not perform functions analogous to those of a prosecutor.  *Id*. at 283 (citing *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir. 1992)).

In *Scotto v. Almenas*, the Second Circuit explained that courts take a functional approach when determining whether an official receives qualified or absolute immunity, examining the nature of the official's responsibilities.  143 F.3d 105, 110 (2d Cir. 1998).  The court noted that a limited number of officials are entitled to absolute immunity from § 1983 damages liability for their official acts because absolute immunity detracts from § 1983's broadly remedial purpose, and therefore the

---

[2]  As noted above, controlling decisions do not include decisions from other circuits or district courts.  *See Ades*, 843 F. Supp. at 892.  City defendants cite only two Eastern District of New York cases in support of their motion; therefore, they point to no controlling case law which we overlooked.  (City Defs. Mem. Supp. Mot. Recons. at 9-10.)

presumption is that qualified immunity is sufficient to protect government officials in the exercise of their duties. *Id.*; *see Burns v. Reed*, 500 U.S. 478, 486-87 (1991) ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. . . . We have been 'quite sparing' in our recognition of absolute immunity. . . .") (internal citations omitted). The court held that the defendant parole officer was not entitled to absolute immunity for initiating parole revocation proceedings. *Scotto*, 143 F.3d at 112. Although such an act was prosecutorial in nature, the defendant did not have the discretionary authority to initiate parole revocation proceedings. *Id.* The court concluded that the defendant's role was similar to that of a police officer applying for an arrest warrant, and declined to extend absolute immunity more than was strictly necessary to safeguard the independent exercise of the prosecutorial function. *Id.* at 113.

Likewise, in this action, Iarocci did not have the discretionary authority[3] pursuant to the Collective Bargaining Agreement[4] to prefer disciplinary charges against plaintiff, a function which is prosecutorial in nature. In fact, Iarocci did not prefer the charges, Generoso did. Iarocci recommended that Generoso file them, however, Iarocci has not shown, nor is this Court able to conclude, that recommending that Generoso prefer charges in this instance is equivalent to a prosecutorial function. We decline to extend absolute immunity more than necessary to protect the exercise of the prosecutorial function when qualified immunity is sufficient to protect Iarocci. *See Scotto*, 143 F.3d at 113. Contrary to the position of City defendants, it is not the mere decision to

---

[3] City defendants argue that this Court found that Iarocci's position did give him the authority to make employment policies for the City. (City Defs. Mem. Supp. Mot. Recons. at 10.) However, the authority to make employment policies for the City is not the functional equivalent of a prosecutor's authority.

[4] Because plaintiff was a member of the union, the disciplinary proceedings against her were governed by the Collective Bargaining Agreement. (7/18/08 Op. at 2, 7.)

initiate charges that is protected by absolute immunity. The inquiry requires that the court consider whether the official's action was equivalent to a prosecutorial function.

City defendants also argue that the Court's Opinion contains a "logical inconsistency" which creates a "manifest injustice to Iarocci." (City Defs. Mem. Supp. Mot. Recons. at 11.) According to City defendants, the Court's determination that issues of fact precluded summary judgment in favor of Iarocci on the grounds of lack of personal participation could not be reconciled with the Court's holding that Iarocci's lack of personal participation precluded application of absolute immunity. (*Id*.) However, we did not conclude that absolute immunity did not apply to Iarocci because of his lack of personal participation, we concluded that absolute immunity did not apply because Iarocci did not perform the prosecutorial function of preferring disciplinary charges against plaintiff. Iarocci's participation did not rise to the functional equivalent of a prosecutor, entitling him to absolute immunity.[5]

---

[5] Defendants also state that in our Opinion we determined that plaintiff had provided evidence of retaliatory intent sufficient to make defendants' motivation for filing the disciplinary charges a triable issue of fact, and we therefore denied qualified immunity to Iarocci. (*Id*. at 12.) They argue that, because we denied Iarocci qualified immunity on the grounds that there was evidence of retaliatory intent for his filing the charges, it is inconsistent to deny him absolute immunity on the grounds that he did not file the charges. (*Id*. at 12-13.) Presented this way, City defendants' motivation to move for reconsideration is understandable. However, as explained, the inquiry for determining absolute immunity is whether Iarocci's function in deciding to prefer charges against plaintiff was prosecutorial in nature. This is separate and distinct from the inquiry for determining qualified immunity and § 1983 liability.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for reconsideration is denied.

SO ORDERED.

Dated: White Plains, New York
October 3, 2008

_William C. Conner_
Sr. United States District Judge